UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
James Gross,

                    Petitioner,                      **MEMORANDUM & ORDER**
                                                                     20-CV-03037 (DG)
                    v.

Superintendent Mark Royce, The Attorney General
of New York,

                    Respondents.[*]
-----------------------------------------------------------X
DIANE GUJARATI, United States District Judge:

On June 25, 2020,[1] *pro se* Petitioner James Gross, incarcerated at Green Haven Correctional Facility in Stormville, New York, filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254.  Petition ("Pet."), ECF No. 1.  Petitioner challenges his March and July 2009 convictions in County Court, Suffolk County, New York, for robbery in the second degree in the first case, and one count of robbery in the first degree, two counts of robbery in the second degree, and three counts of robbery in the third degree in the second case. *See People v. Gross*, 78 A.D.3d 1196 (2d Dep't 2010); *People v. Gross*, 88 A.D.3d 905 (2d Dep't 2011); *see also* Respondents' Affirmation in Support ("Respondents' Aff.") ¶¶ 3-4, ECF No. 5.[2]  Petitioner asserts ineffective assistance of counsel, due process, and actual innocence claims.  *See generally* Pet.

---

[*] The Clerk of Court is directed to update the caption as set forth above.

[1] Although the filing date reflected on the docket is July 6, 2020, the earlier date is the operative date under the "prison mailbox rule."  *See Noble v. Kelly*, 246 F.3d 93, 97-98 (2d Cir. 2001).

[2] Petitioner mistakenly states, with respect to the second case, that he was convicted of two counts of robbery in the first degree, three counts of robbery in the second degree, and two counts of robbery in the third degree.  *See* Pet. at 1-2.

Pending before the Court is Respondents' Motion to Dismiss the Petition as untimely. *See* Respondents' Aff.; Respondents' Memorandum of Law ("Respondents' Mem."), ECF No. 5-1. As set forth more fully below, Petitioner's claims were not filed within the applicable one-year statute of limitations provided by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Petitioner is not entitled to statutory or equitable tolling of the limitations period, and Petitioner has failed to show a credible claim of actual innocence that would overcome the statute of limitations. Accordingly, the Petition must be dismissed.

**BACKGROUND**

On March 24, 2009, Petitioner James Gross was sentenced after a trial to twenty-five years to life on one count of robbery in the second degree. Pet. at 1-2[3]; Respondents' Aff. ¶ 3. Petitioner appealed his conviction, Pet. at 2, and on November 30, 2010, the Supreme Court of the State of New York, Appellate Division, Second Department ("Second Department") affirmed the conviction, s*ee Gross*, 78 A.D.3d at 1196. Petitioner sought leave to appeal, which the New York State Court of Appeals ("Court of Appeals") denied on January 28, 2011. Pet. at 2; *see also People v. Gross*, 16 N.Y.3d 743 (2011).

On July 24, 2009, Petitioner was sentenced after a separate trial on one count of robbery in the first degree, two counts of robbery in the second degree, and three counts of robbery in the third degree. *See Gross*, 88 A.D.3d at 905; Respondents' Aff. ¶ 4. The sentence imposed "totaled thirty years to life" and was to run concurrently with the sentence imposed for the conviction following Petitioner's first trial. Pet. at 2; Respondents' Aff. ¶ 5. Petitioner appealed the convictions resulting from his second trial to the Second Department, Pet. at 3, which

---

[3] For Petitioner's filings, the Court refers to the page numbers generated by the Court's electronic case filing system.

affirmed those convictions on October 18, 2011, *see Gross*, 88 A.D.3d at 905. The Court of Appeals denied leave to appeal on February 1, 2012. Pet. at 3; *see also People v. Gross*, 18 N.Y.3d 924 (2012).[4]

On July 14, 2016, Petitioner filed a motion to vacate his judgments of conviction and sentences pursuant to New York Criminal Procedure Law Section 440.10 ("440.10 motion"). *See* Pet. at 3; *see also* ECF No. 5-3 at 30. Petitioner sought vacatur due to prosecutorial misconduct, ineffective assistance of counsel, and newly discovered evidence. Pet. at 3; ECF No. 5-3 at 30. The County Court, Suffolk County, New York, denied Petitioner's 440.10 motion on September 19, 2016. Pet. at 3; ECF No. 5-3 at 31. Leave to appeal that decision was denied on January 18, 2017. Pet. at 3; ECF No. 9.

On December 21, 2016, Petitioner filed a second 440.10 motion in which he again sought to vacate his judgments on the grounds of prosecutorial misconduct, ineffective assistance of counsel, and newly discovered evidence. Pet. at 3; ECF No. 5-3 at 33; ECF No. 9. His motion was denied by the County Court on April 20, 2017, ECF No. 5-3 at 34, and leave to appeal that decision was denied on July 25, 2017, Pet. at 4; ECF No. 9.

Petitioner's third and final 440.10 motion was filed on November 28, 2018. *See* Pet. at 4; ECF No. 5-2 at 1. In this 440.10 motion, Petitioner sought to vacate his judgments based on prosecutorial misconduct, ineffective assistance of counsel, and his actual innocence. Pet. at 4; *see also* ECF No. 5-2 at 1-2. The motion was denied on January 25, 2019. *See* Pet. at 4; ECF No. 5-2 at 2. In denying the motion, the County Court noted that two of Petitioner's claims – ineffective assistance of counsel and prosecutorial misconduct – had already been raised, and

---

[4] Petitioner's convictions arose out of a string of robberies of Suffolk County retail shops in October 2007. Respondents' Aff. ¶ 6.

that Petitioner was therefore "precluded from again asserting these same claims." ECF No. 5-2 at 2. As to the third, the court concluded that Petitioner's actual innocence claim failed because he did not "present any evidence to support this claim." *Id.* Petitioner's appeal to the Second Department was denied on August 26, 2019. *See* Pet. at 4.

On June 25, 2020, Petitioner submitted the instant Petition for Writ of Habeas Corpus. *See* Pet. at 29. Respondents moved to dismiss the Petition on November 4, 2020 pursuant to 28 U.S.C. § 2244(d), *see* ECF No. 5, and Petitioner filed a Traverse on November 17, 2020, *see* Traverse, ECF No. 6. On June 1, 2021, Respondents filed a letter providing certain dates pertaining to Petitioner's 440.10 motions. ECF No. 9.[5]

## DISCUSSION

### I. Applicable Statutory Provisions and Equitable Doctrines

#### A. Statute of Limitations

AEDPA provides in relevant part:

A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[5] By letter dated October 18, 2020, Petitioner sought the appointment of an attorney and numerous and varied documents, ranging from his trial transcripts to ballistics reports. *See* ECF No. 4 at 1-2. In his Traverse, Petitioner asked the Court to obtain and conduct an *in camera* review of certain 911 calls. Traverse at 22-23. By letter dated February 18, 2021, Petitioner asked the Court to review *Schlup v. Delo*, 513 US. 298 (1995), prior to ruling on the Petition. ECF No. 7. And, by letter dated February 28, 2021, Petitioner asked the Court to obtain and review the disciplinary records of certain unnamed Suffolk County officials and police personnel. ECF No. 8 at 1. The requests in Petitioner's October 18 letter and the requests to obtain and review certain 911 calls and disciplinary records are denied given the dismissal of the Petition on untimeliness grounds.

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

With respect to Section 2244(d)(1)(D), although Congress did not define "factual predicate," the United States Court of Appeals for the Second Circuit has held that it "consists only of the 'vital facts' underlying the claim" – *i.e.*, "those without which the claim would necessarily be dismissed under Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts . . . or Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Rivas v. Fischer*, 687 F.3d 514, 535 (2d Cir. 2012). Thus, "if new information is discovered that merely supports or strengthens a claim that could have been properly stated without the discovery, that information is not a 'factual predicate' for purposes of triggering the statute of limitations under § 2244(d)(1)(D)." *Id.* (quoting *McAleese v. Brennan*, 483 F.3d 206, 214 (3d Cir. 2007)); *see also, e.g.*, *Irizarry v. LaClair*, No. 17-CV-00739, 2018 WL 3632508, at *3 (S.D.N.Y. July 30, 2018) ("[Section] 2244(d)(1)(D) 'does not convey a statutory right to an extended delay while a habeas petitioner gathers every possible scrap of evidence that might support his claim.'" (alterations adopted) (quoting *Lucidore v. N.Y. State Div. of Parole*, No. 99-CV-02936, 1999 WL 566362, at *5 (S.D.N.Y. Aug. 3, 1999), *aff'd*, 209 F.3d 107 (2d Cir. 2000))).

### B. Tolling the Statute of Limitations

As relevant here, the one-year limitations period can be tolled – *i.e.*, paused – in two ways. First, AEDPA provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under [Section 2244(d)]." 28 U.S.C. § 2244(d)(2). For example, "a properly filed 440.10 motion tolls AEDPA's limitations period." *Waters v. Connolly*, No. 12-CV-04205, 2013 WL 3821634, at *3 (E.D.N.Y. July 21, 2013); *Pratt v. Greiner*, 306 F.3d 1190, 1191 (2d Cir. 2002) (holding that a 440.10 motion properly filed under 28 U.S.C. § 2244(d)(2) "toll[s] the one-year statute of limitations under" AEDPA). And a properly filed 440.10 motion will remain "'pending' for purposes of AEDPA at least from the time it is filed through the time in which the petitioner could file an application for a certificate for leave to appeal the . . . denial of the motion" to the Court of Appeals. *Saunders v. Senkowski*, 587 F.3d 543, 548 (2d Cir. 2009) (citing *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd on other grounds*, *Artuz v. Bennett*, 531 U.S. 4 (2000)).

Second, even where not statutorily tolled, the statute of limitations may be tolled for equitable reasons. *See Holland v. Florida*, 560 U.S. 631, 645-49 (2010). However, the Second Circuit has "clearly stated that the AEDPA limitations period will only be [equitably] tolled in 'rare and exceptional circumstance[s].'" *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010) (second alteration in original) (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam)). To qualify for equitable tolling, a habeas petitioner must establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Dillon v. Conway*, 642 F.3d 358, 362 (2d Cir. 2011) (quoting *Holland,* 560 U.S. at 649). Equitable tolling "requires the petitioner to demonstrate a causal

6

relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Valverede v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000); *see also Jenkins v. Greene*, 630 F.3d 298, 303 (2d Cir. 2010). "The term 'extraordinary' does not refer to the uniqueness of the petitioner's circumstances, 'but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period.'" *Bolarwina*, 593 F.3d at 231-32 (quoting *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008)). "Sufficiently 'severe' obstacles have included extraordinary attorney misconduct, the petitioner's mental illness, or hospitalization, prolonged delay by a state court in sending notice of a ruling, and intentional obstruction by prison officials of an inmate's ability to file his petition." *Barrientos v. Lee*, No. 14-CV-03207, 2015 WL 3767238, at *9 (S.D.N.Y. June 17, 2015) (citations omitted).

### C.  The Equitable Exception to the Statute of Limitations

The limitations period can also be overcome via an "equitable exception." *Rivas*, 687 F.3d at 547. Specifically, "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *see also Rivas v. Fischer*, 780 F.3d 529, 545 n.25 (2d Cir. 2015). In other words, "[a] showing of actual innocence can overcome the one-year statute of limitations for filing habeas petitions." *Branch v. Superintendent*, No. 11-CV-00227, 2014 WL 6737000, at *3 (E.D.N.Y. Dec. 1, 2014) (citing *McQuiggin*, 596 U.S. at 386). However, "the gateway standard for actual innocence is demanding and rarely met." *Hyman v. Brown*, 927 F.3d 639, 662 (2d Cir. 2019).

7

"[A] claim of actual innocence must be both 'credible' and 'compelling.'" *Rivas*, 687 F.3d at 541. To be "credible," an actual innocence claim "must be supported by 'new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.'" *Id.* (quoting *Schlup v. Delo*, 513 US. 298, 324 (1995)). To make a "compelling" actual innocence claim, a petitioner "must demonstrate that 'more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt – or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.'" *Id.* (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)).

## II. The Petition is Untimely and Must be Dismissed

### A. The Petition is Time-Barred Under 28 U.S.C. § 2244(d)(1)(A)

Because Petitioner did not petition for a writ of certiorari to the Supreme Court, his convictions became final 90 days after the Court of Appeals denied his applications for leave to appeal. *See Cruz v. McGinnis*, No. 11-CV-03442, 2011 WL 5848579, at *4 (E.D.N.Y. Nov. 22, 2011) (citing *Fernandez v. Artuz*, 402 F.3d 111, 112 (2d Cir. 2005)). With the Court of Appeals denying leave on January 28, 2011, *Gross*, 16 N.Y.3d at 743, and February 1, 2012, *Gross*, 18 N.Y.3d at 924, respectively, the clock began to run for AEDPA statute of limitation purposes – *i.e.*, Petitioner's judgments became final – on April 28, 2011 and May 1, 2012, respectively. Petitioner therefore had until April 30, 2012[6] and May 1, 2013, respectively, to petition.

---

[6] One year from April 28, 2011 was Saturday, April 28, 2012. Petitioner, therefore, had until Monday, April 30, 2012 to file his petition. *See, e.g.*, *Persaud v. United States*, No. 12-CV-02051, 2012 WL 5199371, at *4 (S.D.N.Y. Oct. 22, 2012).

8

Petitioner did not, however, file the Petition until June 25, 2020, many years after the statute of limitations had run. Accordingly, the Petition is time-barred under Section 2244(d)(1)(A).[7]

## B. The Petition is Time-Barred Under 28 U.S.C. § 2244(d)(1)(D)

Although Petitioner does not expressly invoke Section 2244(d)(1)(D), in light of the numerous documents post-dating his convictions that Petitioner attaches to his Petition, and mindful of Petitioner's *pro se* status, *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam), the Court considers the applicability of Section 2244(d)(1)(D). Here, however, there is no belatedly-discovered factual predicate evident from the record that would support the application of Section 2244(d)(1)(D) and render Petitioner's claims timely as of June 25, 2020.

Petitioner asserts seven ineffective-assistance-of-counsel-related claims.[8] With respect to six of the seven, however, Petitioner implicitly concedes that he was aware of their factual

---

[7] Because "Section 2244(d)(2) does not toll the AEDPA limitations period if the relevant post-conviction motion was submitted after the AEDPA limitations period already expired," *Then v. Griffin*, No. 17-CV-03681, 2018 WL 2390124, at *4 (E.D.N.Y. May 25, 2018), Petitioner's 440.10 motions, the earliest of which was filed on July 14, 2016, *see* Pet. at 3; *see also* ECF No. 5-3 at 30; ECF No. 9, have no bearing on the timeliness of the Petition under Section 2244(d)(1)(A). *See, e.g.*, *Diaz*, 515 F.3d at 152 ("Because [petitioner's] one year statutory filing period had already expired, [petitioner's] subsequent state court collateral attack [pursuant to New York Criminal Procedure Law Section 440.10] does not toll the federal limitations period.").

[8] They are: "The petitioner was denied effective assistance of counsel when trial counsel failed to conduct an adequate investigation regarding, The Suffolk County District Attorneys office giving out sensitive information to members of organized crime;" "The petitioner was denied effective assistance of counsel when trial counsel failed to conduct an adequate investigation regarding; The connection between Detective Lopez, Mr, Matthew Madonna and the Petitioner;" "The petitioner was denied effective assistance of counsel when trial counsel failed to conduct an adequate investigation regarding; The killing and dismemberment of Ms, Irina Malezhik . . . ;" "The petitioner was denied effective assistance of counsel when trial counsel failed to conduct an adequate investigation regarding; The petitioners Alibi witnesses and failing to impeach the prosecutions witnesses, Mr, Richie Taylor and Detective Lopez;" "The petitioner was denied effective assistance of counsel when trial counsel failed to conduct an

9

predicates – even if not the corroborating evidence, *see Rivas*, 687 F.3d at 535[9] – at or shortly after his second trial by repeatedly citing to trial transcript pages and stating that he "informed" his counsel and/or the trial court of the substance of his claims. *See* Pet. at 6, 8-9, 11-14, 16-19; *see also* ECF No. 5-3 at 30-31 (County Court, Suffolk County, 440.10 opinion dated September 19, 2016 denying a number of claims presented in the Petition, including that "his attorney was ineffective when he refused to conduct an investigation into the District Attorney's office, defendant's witnesses, and his claims"); *id.* at 33-34 (County Court, Suffolk County, 440.10 opinion dated April 20, 2017 denying additional claims presented in the Petition). As for the seventh, Petitioner was undoubtedly aware by the time of his trials that he had not testified before a grand jury in advance of them. *See* Pet. at 20. As such, the factual predicates for Petitioner's ineffective assistance of counsel claims existed years before Petitioner filed his habeas petition, and these claims are untimely. *See Rivas*, 687 F.3d at 537 (finding ineffective assistance of counsel claims "arose well in advance" of Petitioner's belatedly filed habeas petition where "[a]ll of the[] allegations concern[ed] errors made prior to or during [petitioner's]

---

adequate investigation regarding; The suffolk county district attorneys office authorized detective Michael Sanchez of the suffolk county police depart to conduct surveillance on the petitioner . . . . ;" "The petitioner was denied effective assistance of counsel when trial counsel failed to conduct an adequate investigation regarding; The connection between the petitioner and Ms, Rosina Madonna . . . . ;" and "Petitioners attorney was ineffective assistance of counsel when he allowed the petitioner to be indicted knowing that the petitioner requested to be present at each and every grand jury to testify on his own behalf." Pet. at 6, 8-9, 11, 13, 16, 18, 20 (errors in original).

[9] The documents attached to the Petition, to the extent they have any bearing at all on Petitioner's ineffective assistance of counsel claims, at best marginally "support[] or strengthen[]," *Rivas*, 687 F.3d at 535 (citing *McAleese*, 483 F.3d at 214), them. *See* ECF No. 1-1 at 4, 6, 9-18 (concerning political tensions, victims, suggestions of criminality, and actual criminality in Suffolk County unrelated to Petitioner's cases though, in some instances, pertaining to certain of the individuals Petitioner has accused of wrongdoing); ECF No. 1-2 at 2-3, 26-31, 33-42 (similar); ECF No. 1-3 at 2-3, 12-19 (similar). They cannot, therefore, form a factual predicate for purposes of triggering Section 2244(d)(1)(D). *See Rivas*, 687 F.3d at 535.

trial"); *Granados v. Singas*, No. 16-CV-02212, 2016 WL 6205800, at *4 (E.D.N.Y. Oct. 24, 2016); *compare Bryant v. Thomas*, 274 F. Supp. 3d 166, 180-81 (S.D.N.Y. 2017) (Section 2244(d)(1)(D) inapplicable where "Petitioner was aware that serological evidence existed and was relevant to his conviction . . . [but] took no further action with regard to seeking out additional information . . . until [years later], when he filed a FOIL request"), *aff'd,* 725 F. App'x 72 (2d Cir. 2018), *with Johnson v. Nickles*, No. 08-CV-05193, 2010 WL 3912267, at *5 (S.D.N.Y. Sept. 13, 2010) (Section 2244(d)(1)(D) triggered even though petitioner's counsel was aware of certain exculpatory evidence because petitioner claimed his counsel was ineffective for not using it, and petitioner was seemingly unaware of the exculpatory information until later).

It is also clear that Petitioner knew the factual predicates for all but one of his various due process claims at least by the time of his second trial. As noted above, Petitioner would have known in advance of his trials that he had not been afforded the opportunity to testify before the grand jury despite requesting to do so. *See* Pet. at 20, 26-27; *see also* ECF No. 5-3 at 33-34 (April 20, 2017 Suffolk County Court opinion denying Petitioner's second 440.10 motion and referencing Petitioner's grand jury-related claims). In addition, Petitioner evidently knew during his first trial the factual predicate for his claim regarding an audiotape allegedly withheld from him at his first trial, *see* Pet. at 23 ("In petitioner[']s first trial . . . petitioner informed the court that the district attorney was with[]holding" the audiotape); *see also* Traverse at 17-18, and certainly knew the factual predicate for the claim by the time of his second trial – when the audiotape was played, *see* Pet. at 23; *see also* ECF No. 5-3 at 31 (September 19, 2016 County Court opinion denying Petitioner's first 440.10 motion and referencing Petitioner's audiotape claim). Petitioner would also have known the factual predicate for his claim that the prosecution "used improper motives and tactic[s] to influence[] the jury in [its] closing argument," Pet. at 25,

11

at least by the end of his second trial. As to this claim, Petitioner contends that the prosecution knew that the Suffolk County Police Department was surveilling him and knew of the above-referenced audiotape – in which Petitioner discussed the Suffolk County District Attorney's Office allegedly "giving out sensitive information" to an organized crime family member, *id.* at 23 – and yet the prosecution stated in its summation that there was "no proof" the mafia and police were concerned about him, *id.* at 25 (emphasis omitted). However, as noted above, Petitioner knew that the prosecution possessed the audiotape no later than his second trial, and, according to Petitioner, in "2008-2009" he told "his trial counsel and the court . . . he was under surveillance by the [S]uffolk [C]ounty police at the time [the] robberies took place." *Id.* at 24. Petitioner therefore was aware of the factual predicate for this claim, too, years before he filed the Petition.

The only one of Petitioner's claims that merits further discussion with respect to Section 2244(d)(1)(D) is his claim premised on an alleged violation of *Brady v. Maryland*, 373 U.S. 83 (1963), due to the prosecution's failure to turn over allegedly exonerative surveillance records. However, even as to this claim, the record facts are insufficient to trigger application of Section 2244(d)(1)(D).

Petitioner asserts that he told his counsel and the court in "2008-2009" that he was being surveilled at the time of the robberies for which he ultimately was convicted. Pet. at 24. Petitioner further asserts that he did not "discover[]" from the Suffolk County Police Department headquarters that "this surveillance . . . exist[ed]" until March 1, 2016. *Id.* Starting on December 28, 2016, Petitioner began filing state and federal records requests relating to the alleged surveillance. *See* ECF No. 1-4 at 12; Pet. at 24-25. Importantly for present purposes, although Petitioner made FOIL and FOIA requests for surveillance records, he did not receive

12

any surveillance tapes in response. Indeed, neither the March 1, 2016 document that Petitioner references, *see* ECF No. 1-4 at 9-10, nor the records request correspondence attached to the Petition indicates that any such tapes exist, *see id.* at 2-8, 11-14. Accordingly, the existence of exonerative or favorable records – and therefore the factual basis for Petitioner's *Brady* claim – is entirely speculative at this juncture. *See Hayes v. Lee*, No. 11-CV-01365, 2015 WL 5943677, at *31 n.34 (S.D.N.Y. Oct. 13, 2015); *Skinner v. Duncan*, No. 01-CV-06656, 2003 WL 21386032, at *25 (S.D.N.Y. June 17, 2003) (collecting cases). *Alleged* records do not constitute "vital facts." *Rivas*, 687 F.3d at 535.

Furthermore, the record does not indicate that Petitioner exercised due diligence in seeking to obtain the surveillance records insofar as he was, by his own admission, aware in 2008 of having been surveilled, *see* Pet. at 17; Traverse at 16, yet waited approximately eight years before seeking to obtain records substantiating that fact, *see* ECF No. 1-4 at 2-14. *See McDermott v. Rock*, No. 97-CV-00932, 2008 WL 346371, at *2-3 (N.D.N.Y. Feb. 6, 2008); *see also Joost v. United States*, 336 F. Supp. 2d 185, 188 (D.R.I. 2004) (finding a lack of due diligence under an analogous provision of 28 U.S.C. § 2255 where petitioner "delayed three years before filing his FOIA request for the documents upon which his motion [was] based, even though he had been asserting" the claims asserted in his petition "since the time of trial"), *aff'd*, 226 F. App'x 12 (1st Cir. 2007); *see also Chi Fai Wong v. United States*, No. 05-CV-00176, 2008 WL 4682428, at *2 (E.D.N.Y. Oct. 21, 2008) (filing FOIA request did "not support a finding of timeliness" when it was filed "more than one year after Petitioner's conviction became final").

Finally, even assuming Petitioner's *Brady* claim did not "accrue[]," *Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000); *see also Ocasio v. Lee*, No. 14-CV-06097, 2017 WL

13

456468, at *3 (S.D.N.Y. Feb. 2, 2017), until March 1, 2016 when Petitioner claims he discovered the records' existence, Pet. at 16-17, 24; *see also* Traverse at 16-17, the one-year window to bring a habeas claim premised on that factual predicate had long closed even if Petitioner's subsequent 440.10 motions tolled the statutory time period.

Altogether, then, the Petition is not timely under Section 2244(d)(1)(D).

### C. Equitable Tolling Is Not Warranted

Petitioner does not expressly seek equitable tolling. In light of Petitioner's *pro se* status, however, the Court nonetheless considers whether equitable tolling applies here. The Court concludes that it does not. Notably, Petitioner does not allege that any extraordinary circumstance prevented him from timely filing a petition either in the year following his convictions or even in the four years following his claimed discovery of allegedly exonerative surveillance records. And, no such extraordinary circumstance is evident from a review of the record. To the contrary, Petitioner filed three 440.10 motions after his alleged discovery in March 2016, *see* Pet. at 3-4; ECF No. 5-3 at 30; ECF No. 5-2 at 1-2; ECF No. 9, along with several records requests, *see* ECF No. 1-4 at 2-14, which indicates the absence of any extraordinary circumstance preventing timely filing. *See, e.g.*, *De Los Santos v. Ercole*, No. 07-CV-07569, 2013 WL 1189474, at *7 (S.D.N.Y. Mar. 22, 2013) ("[C]ourts have regularly held that a petitioner is not entitled to equitable tolling when his conduct indicates that he was able to investigate and pursue other legal avenues during the time period at issue.").

Because the record does not reflect that any extraordinary circumstance prevented Petitioner from filing a petition within the applicable statutory period, the Court declines to apply equitable tolling.

### D. Petitioner Has Not Shown A "Credible" Claim of Actual Innocence

Petitioner argues that the Petition is timely because "an actual innocence claim[] supersedes any procedurally barred claim." Traverse at 20. Petitioner is correct that "the requisite showing of actual innocence will take [a] habeas petition out of the statute of limitations, regardless of how much time has passed since the conviction." *Allah v. Cunningham*, No. 13-CV-02805, 2016 WL 335864, at *7 (E.D.N.Y. Jan. 27, 2016); *see also McQuiggin*, 569 U.S. at 386. However, a claim of actual innocence requires much more than an allegation of innocence, and Petitioner has not made the "requisite showing." *Allah*, 2016 WL 335864, at *7; *see also Rivas*, 687 F.3d at 541.

In support of his claim, Petitioner attaches various documents to his Petition. These documents fall into three categories. The first comprises documents Petitioner created – *e.g.*, maps and blueprints he has drawn, *see* ECF No. 1-3 at 5-11, that, he claims, implicate certain individuals involved in his cases, *see* Pet. at 9; ECF No. 1-4 at 51, 55; Traverse at 12-13, and letters he has sent to third parties that principally reiterate themes from, and claims in, his Petition, *see* ECF No. 1-1 at 2-3, 5, 7-8; ECF No. 1-2 at 4-11, 16-17, 20-24; ECF No. 1-3 at 4. The second encompasses various publicly-available news articles, press releases, and court documents pertaining to certain of the individuals Petitioner claims set him up. *See, e.g.*, ECF No. 1-1 at 4, 6, 9-18; ECF No. 1-2 at 2-3, 26-31, 33-42; ECF No. 1-3 at 2-3, 12-19. These documents, however, do not involve Petitioner, and, to the extent they involve criminality, they involve corruption and obstruction, *see, e.g.*, ECF No. 1-1 at 4, 6, 9-14, 16-18; ECF No. 1-3 at 2-3, 17, or criminal activity such as abuse and murder, *see, e.g.*, ECF No. 1-2 at 2-3, 26-31, 33-42; ECF No. 1-3 at 12-17, none of which has any meaningful relation to Petitioner's crimes of conviction – relating to the robbery of retail shops – or, more generally, to the framing of

innocent individuals. The third category of documents encompasses Petitioner's records requests, including for surveillance records, and responses to those requests dating from 2013 to 2018. *See* ECF No. 1-2 at 12-15, 18; ECF No. 1-4 at 2-21, 24-27. The responses from the relevant state and federal authorities give little indication what, if any, documents Petitioner may ultimately receive. ECF No. 1-2 at 13-15, 18; ECF No. 1-4 at 3-4, 7, 9-11, 14, 16-21, 24-26. Significantly, no surveillance records or tapes are attached to the Petition, and Petitioner does not indicate what, if anything, occurred in relation to his surveillance records requests in the approximately three years that passed between the most recent surveillance-related correspondence and the filing of the Petition.

These documents – Petitioner's own letters and maps, publicly available documents that are, at best, tangentially related to his case, and correspondence concerning Petitioner's state and federal records requests – are "simply not the *type* of evidence that meet[s] the *Schlup* requirement of credible and reliable new evidence," such as "signed, notarized and sworn statements of alibi witnesses, written recantation of prosecution's sole witness, unchallenged testimony of a respected forensic pathologist that murder took place at a time that petitioner had an unchallenged alibi, and DNA testing." *Diaz v. Bellnier*, 974 F. Supp. 2d 136, 144 (E.D.N.Y. 2013) (citations omitted); *see also Green v. Chappius*, No. 17-CV-03129, 2019 WL 7811271, at *10 (S.D.N.Y. Nov. 27, 2019) ("Petitioner's vague assertion that a potentially exculpatory confession exists does not rise to the level of credible or compelling evidence sufficient to make a showing of actual innocence."), *report and recommendation adopted,* 2020 WL 495497 (S.D.N.Y. Jan. 30, 2020); *Schlup*, 513 U.S. at 324 (qualifying evidence includes "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence").

Thus, "[b]ecause Petitioner's proffered evidence does not constitute the type of 'new reliable evidence' held by courts to satisfy the" credibility requirement, "on this basis alone, Petitioner is not entitled to an equitable exception to the AEDPA-imposed statute of limitations." *See Diaz*, 974 F. Supp. 2d at 144.

The Petition is time-barred and must be dismissed.

## CONCLUSION

Petitioner's claims were not filed within the applicable one-year statute of limitations provided by AEDPA, Petitioner is not entitled to statutory or equitable tolling of the limitations period, and Petitioner has failed to show a credible claim of actual innocence that would overcome the statute of limitations.

For the foregoing reasons, Respondents' Motion, ECF No. 5, is GRANTED and the Petition is DISMISSED as untimely.

The Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2). Petitioner, however, has a right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253(c).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, denies *in forma pauperis* status for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

*/s/ Diane Gujarati*
DIANE GUJARATI
United States District Judge

Dated: June 4, 2021
Brooklyn, New York